UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KENNEDY XIONG, <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendants. | Case No. 1:21-cv-01782-EPG <br><br> FINAL JUDGMENT AND ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT <br><br> (ECF Nos. 1, 14). |

This matter is before the Court on Plaintiff's complaint for judicial review of an unfavorable decision by the Commissioner of the Social Security Administration regarding his application for disability and supplemental security income benefits. The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c) with any appeal to the Court of Appeals for the Ninth Circuit. (ECF No. 9).

Plaintiff argues as follows:

> Logical errors in the ALJ's assessed RFC compel remand where the ALJ failed to support both the physical and mental RFC, ignored substantial evidence, and improperly dismissed treating source statements.

(ECF No. 14, p. 1).

Having reviewed the record, administrative transcript, the briefs of the parties, and the

1

applicable law, the Court finds as follows:

**I.   ANALYSIS**

  **A.   Medical Opinions**

Plaintiff challenges the ALJ's evaluation of several medical source opinions.[1] Plaintiff generally argues that the ALJ improperly discounted the opinion of some medical sources in favor of other medical source without articulating why or why not the relevant opinions were persuasive. As a result, Plaintiff contends that the resulting RFC fails to address Plaintiff's alleged mental and physical limitations.

Because Plaintiff applied for benefits in March 2019 (A.R. 15), certain regulations concerning how ALJs must evaluate medical opinions and prior administrative findings for claims filed on or after March 27, 2017, govern this case. 20 C.F.R. §§ 404.1520c, 416.920c. These regulations set "supportability" and "consistency" as "the most important factors" when determining an opinion's persuasiveness. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). And although the regulations eliminate the "physician hierarchy," deference to specific medical opinions, and assignment of "weight" to a medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions." 20 C.F.R. §§ 404.1520c(a)-(b); 416.920c(a)-(b).

Under the new regulations, "the decision to discredit any medical opinion, must simply be supported by substantial evidence." *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022). "Substantial evidence means more than a scintilla but less than a preponderance." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). It is "relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Id.*

---

[1]   Plaintiff also argues that the RFC assessment formulated by the ALJ, specifically with respect to Plaintiff's manipulation and right upper extremity limitations, was not supported by substantial evidence. (*See* ECF No. 14, p. 15). This brief argument primarily contends that the ALJ erred by failing to reconcile the opinions of Dr. Benck and Dr. Gurshani, which the ALJ found to be not persuasive, with the opinion of Dr. Sachdeva, which the ALJ found to be "generally but not fully persuasive." (*Id.*) While Plaintiff's brief extensively challenges the ALJ's findings regarding Dr. Benck and Dr. Gurshani, (*see id.* at pp. 13-14), Plaintiff does not otherwise argue that the ALJ erred in evaluating Dr. Sachdeva's opinion. Thus, the Court will not address the ALJ's finding regarding the opinion of Dr. Sachdeva. To the extent that Plaintiff challenges the RFC assessment on other grounds, the Court will address those arguments in the sections below.

In conjunction with this requirement, "[t]he agency must 'articulate . . . how persuasive' it finds 'all of the medical opinions' from each doctor or other source. . .and 'explain how [it] considered the supportability and consistency factors' in reaching these findings." *Woods*, 32 F.4th at 792 (internal citations omitted). As provided by the regulations,

> Supportability means the extent to which a medical source supports the medical opinion by explaining the "relevant . . . objective medical evidence. Consistency means the extent to which a medical opinion is "consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.

*Id.* at 791-92 (internal citations omitted).

Keeping these standards in mind, the Court now considers whether the ALJ provided legally sufficient reasons to either discount or credit the medical opinions of Dr. Michiel, Dr. Swanson, Dr. Gurshani, and Dr. Benck.

   1.   Dr. Michiel

Plaintiff argues that the ALJ "failed to articulate whether she was persuaded by the findings of examining physician, Dr. Michiel." (ECF No. 14, p. 11). Plaintiff additionally argues that the ALJ had a duty to arrange for further neurological evaluation of the Plaintiff after Dr. Michiel indicated that a neurologist could provide further insight. The Commissioner, in contrast, argues that an ALJ is only required to articulate the persuasiveness of "medical opinions," and under the applicable regulations, the findings of Dr. Michiel cannot be considered a medical opinion. The Commissioner also contends that an ALJ is not required "to follow a consultative examiner's assertion that further development could be addressed by specialist." (ECF No. 17, p. 7).

Dr. Michiel, a board-certified psychiatrist, performed a consultative psychiatric evaluation of Plaintiff on June 22, 2010. (A.R. 1218). As for any medical findings or diagnoses observed during the examination, Dr. Michiel wrote:

> Every question I asked he would answer by saying, "I don't remember" and it was very hard for me to know if he is exaggerating his symptoms as amnesia or if it is true that he has massive brain damage that would cause such as a severe amnesia. I don't have any diagnoses based upon these facts and I believe if the condition is amnesia, I will leave that for the neurologist specialist to comment on in that regard.

(A.R. 1219).

If the information I received from the claimant is reliable the diagnoses will be

3

> neurocognitive disorder due to vascular disease; however, it will remain difficult for me to assess whether the vascular disease affected the areas in the brain that control the memory like the hippocampus, the limbic system, the mammillary bodies; all of these questions would be answered by a neurologist who can comment on the magnitude and severity of the amnesia in such a way that the claimant presented today.

(A.R. 1220).

The ALJ summarized Dr. Michiel's opinion as follows:

> At the June 2019 mental consultative examination with Ekram Michiel, M.D., the claimant again appeared to provide little effort. (See Ex. 7F.) Dr. Michiel writes that the claimant responded to nearly every question with "I don't remember." (See id.) This was the response to biographical questions, such as where the claimant was born or how many children he has; it was also the response to whether he drank alcohol or smoked cigarettes, whether he knew the day, month, season, or year, or whether he knew what he ate for his most recent meal. (See id.) Dr. Michiel writes that it "was very hard for me to know if he is exaggerating his symptoms as amnesia or if it is true that he has massive brain damage that would cause such [ ] severe amnesia." (See id.) The claimant's responses to Dr. Michiel are inconsistent with treatment notes throughout the longitudinal record and suggest the claimant either put forth poor effort at the examination or exaggerated his symptoms.

(A.R. 22).

The Court finds that Dr. Michiel's evaluation does not present any statements "that reflect judgments about the nature and severity of [Plaintiff's] impairment(s), including [Plaintiff's] symptoms, diagnosis and prognosis, what [Plaintiff] can still do despite impairment(s), and [Plaintiff's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1) (definition of medical opinion for claims filed on or after March 27, 2017). Here, Dr. Michiel's consultative examination explicitly does not offer a diagnosis or judgment regarding the nature and severity of Plaintiff's impairments because Dr. Michiel was unable to form an opinion based on Plaintiff's responses. Thus, the ALJ was not required to evaluate the persuasiveness of Dr. Michiel's consultative examination.

Further, the Court finds that the ALJ did not err by failing to arrange a neurological examination. An ALJ has a duty to "fully and fairly develop the record and to assure the claimant's interests are considered" when the record presents ambiguous evidence or if the ALJ finds the record is "inadequate to allow for the proper evaluation of the evidence." *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001). Here, the ALJ made no such finding regarding the

inadequacy of the record. Moreover, the evidence on record regarding Plaintiff's alleged cognitive deficits is not ambiguous. The ALJ extensively discussed treatment notes where Plaintiff displayed normal cognitive and neurological abilities. (A.R. 23 (citing A.R. 377 [October 2018 emergency room examination notes state that Plaintiff displays "appropriate" judgment and insight and "normal sensory, motor, normal speech" neurological functioning]; A.R. 380 [September 20, 2018 neurology examination notes that Plaintiff is "awake and alert, oriented to person/place/time, able to convey history"]; A.R. 367 [December 18, 2018 treatment notes from Plaintiff's family medicine nurse practitioner state that Plaintiff is "alert and oriented to time, place, and person"]; A.R. 363 [February 19, 2019 treatment records from Plaintiff's family medicine nurse practitioner noting same]; A.R. 1224 [June 26, 2019 treatment records from Plaintiff's nephrologist state that Plaintiff is "awake and alert, cooperative, [with] no distress"]; A.R. 1337 [February 16, 2021 treatment records from Plaintiff's family medicine nurse practitioner state "Patient appears well, in no acute distress. Well-groomed, dresses appropriately, speaking in complete sentences. Patient exhibits depressed mood with decreased psychomotor activities, fair eye contact."])). Further, the ALJ also discussed other contemporaneous consultative examinations where Plaintiff put forth poor effort or otherwise appeared to exaggerate the degree of his neurological symptoms. (A.R. 22 (citing A.R. 1197-1201 [June 2019 physical examination with Dr. Sachdeva]; A.R. 1288-1292 [October 2019 mental examination with Dr. Swanson])). Taken together, this evidence indicates that Plaintiff's failure to respond substantively to any question at all was not due to amnesia that require a neurological examination. Accordingly, the ALJ was not required to further develop the record as to Plaintiff's neurological functioning.

   2. <u>Dr. Swanson</u>

Plaintiff also argues that the ALJ erred by finding the opinion of mental consultative examiner, Steven Swanson, Ph.D., to be persuasive. According to Plaintiff, Dr. Swanson's opinion was not supported by examination findings. Further, Plaintiff contends that Dr. Swanson was not qualified to assess Plaintiff's neurological functioning.

Dr. Swanson, a clinical psychologist, performed a mental consultative exam of Plaintiff on October 3, 2019. (A.R. 1288). Dr. Swanson administered the Leiter International Performance

Scale-Revised test, which Dr. Swanson explained in his examination notes is "a non-verbal test of intelligence appropriate for use with individuals ages 2 through adult" that "require[s] neither speech nor the ability to understand speech" and "may be used with those having hearing impairments, severe expressive and/or receptive language disabilities, cerebral palsy, developmental disability, cultural disadvantage, or unfamiliarity with English." (A.R. 1290). Dr. Swanson opined that Plaintiff's test score, which indicated an I.Q. of 40, was "invalid" because Plaintiff "appeared motivated to perform poorly; even giving incorrect responses to very simple, sample items." (A.R. 1290-91). Further, Dr. Swanson opined that "[w]hile the corresponding classification is the Moderate to Severe Mental Retardation, he is seen as functioning at a considerably higher level" and "[t]here is no genuine reason to suspect that [Plaintiff's] mental or emotional functioning falls sincerely outside normal limits despite effort to present otherwise." (A.R. 1291). Dr. Swanson ultimately opined that Plaintiff was not disabled and was otherwise capable of performing work without any mental functioning restrictions.

The ALJ's decision includes a thorough summary of Dr. Swanson's examination. (*See* A.R. 22). The ALJ further evaluated the persuasiveness of Dr. Swanson's opinion as follows:

> The opinion of Dr. Swanson is persuasive. Dr. Swanson opines the claimant is able to maintain concentration and relate appropriately to others in a job setting; would be able to handle funds in his own best interest; can understand, carry out, and remember simple instructions; would respond appropriately to usual work situations; and would not have substantial difficulties responding to changes in routine. (See Ex. 11F.) Dr. Swanson supports his opinion with examination of the claimant. As discussed above, Dr. Swanson discounts much of the claimant's alleged limitations, writing that the claimant was motivated to perform poorly and that there is "no genuine reason to suspect that [the claimant's] mental or emotional functioning falls sincerely outside normal limits despite effort to present otherwise." (See id.) The claimant demonstrated a normal amount of motor movement on exam, as well as unremarkable speech, a constricted range of affect, normal thought content, normal thought processes, and no indication of psychosis. (See id.) Dr. Swanson's opinion is generally consistent with the longitudinal record. As discussed above, mental status exam findings frequently document that the claimant presented to examiners appropriately dressed and groomed, with fair eye contact, a cooperative demeanor, and the ability to communicate effectively. Additionally, examiners frequently report the claimant presented as alert, aware, oriented, without confusion, with grossly intact memory, and an adequate fund of knowledge. (See, e.g., Ex. 1F/2-3, 5-6, Ex. 2F/9, 12, 36, 57, Ex. 4F, Ex. 8F/3, 7, 12, 17, Ex. 17F/10, 12.) For the foregoing reasons, Dr. Swanson's opinion is persuasive.

6

(A.R. 26-27). Elsewhere in the decision, the ALJ also noted that:

> Contemporaneous treatment notes from the claimant's treating provider are in stark contrast to the claimant's purported limitations reflected in the consultative examination notes. For example, treatment notes from a June 26, 2019 visit with his nephrologist document that the claimant presented as awake, alert, cooperative, and without deficits of note. (See Ex. 8F/2-3.) Exam notes do not indicate the level of mental deficits suggested by his responses to Drs. Michiel and Swanson.

(A.R. 23).

The ALJ did not err in considering Dr. Swanson's opinion to be persuasive. The ALJ articulated how she considered the supportability and consistency factors' in reaching this finding. In particular, the ALJ explained that Dr. Swanson's mental status examination of Plaintiff did not support the degree of cognitive deficits alleged by Plaintiff. The ALJ also explained how Dr. Swanson's opinion was consistent with other examination findings, which generally reported that Plaintiff demonstrated normal cognitive abilities. For example, the ALJ cited to notes from a December 2018 family health visit that state Plaintiff did not offer any concerns and appeared "alert and oriented to time, place, and person." (A.R. 27 (citing A.R. 366-7)). The ALJ also cited to a February 2019 family health visit where Plaintiff reported "[n]o other concerns" and that he was "no longer doing PT or OT just exercising at home," and appeared "alert and oriented to time, place, and person." (A.R. 27 (citing to A.R. 363-4)). The visit note also states Plaintiff's status as "improving and stable." (A.R. 364). Further, the ALJ specifically pointed to contemporaneous examination notes that were consistent with Dr. Swanson's opinion that Plaintiff's mental functioning was within normal limits. (A.R. 27 (citing to A.R. 1224 [June 2019 nephrology clinic visit notes indicating that Plaintiff appeared "[a]wake and alert, cooperative, no distress."])).

Moreover, Plaintiff's contention that Dr. Swanson was unqualified to provide an opinion as to Plaintiff's neurological functioning is unavailing. The Commissioner is correct that an ALJ is no longer required to make specific findings regarding the specialization of a medical sources unless the ALJ finds that there are differing opinions about the same issue that are equally supported and equally consistent with the record. 20 C.F.R. § 404.1520c(b)(2)– (3) ("We may, but are not required to, explain how we considered [relationship with claimant, specialization, and other factors], as appropriate, when we articulate how we consider medical opinions…[.]").

Plaintiff argues that other medical opinions, specifically those of Dr. Gurshani and Dr. Benck, were in direct conflict with Dr. Swanson's medical opinion. However, the ALJ did not make a finding that those opinions were as equally supported and consistent with the record as Dr. Swanson's opinion. Accordingly, the ALJ was not required to consider Dr. Swanson's specialization as a psychologist when evaluating the persuasiveness of Dr. Swanson's opinion.

Moreover, licensed psychologists are qualified to assess a Social Security claimant's mental residual functional capacity. Here, Dr. Swanson assessed Plaintiff's ability to understand, remember, and maintain concentration. And while Plaintiff argues that the ALJ should have discounted Dr. Swanson's opinion because he failed to provide any raw data to support the invalid test performance result, Plaintiff does not explain how that raw data would contradict Dr. Swanson's observation that Plaintiff demonstrated a normal amount of motor movement, unremarkable speech, and poor motivation. Accordingly, the ALJ's evaluation of Dr. Swanson's medical opinion is legally sufficient.

3.  Dr. Gursahani

Plaintiff also argues that the ALJ's decision to discount the opinion of Pushpa Gursahani, M.D., was not supported by substantial evidence.

The ALJ extensively discussed the medical opinions provided by Dr. Gursahani, finding as follows:

> The December 2019 and February 2021 opinions of Pushpa Gursahani, M.D., are not persuasive. In December 2019, Dr. Gursahani opined the claimant had the following limitations:

| **Exertional Limitations** | |
|---|---|
| Lifting and/or carrying | Up to 10 pounds, rarely |
| Standing/walk | Less than 2 hours in an 8-hour workday, up to 20 minutes at a time |
| Sitting | About 4 hours in an 8-hour workday, up to 20 minutes at a time |
| **Postural Limitations** | |
| Twist | Never |
| Bend | Never |
| Squat | Never |

8

| | |
|---|---|
| Climb Stairs | Never |
| Climb ladders | Never |
| **Manipulative Limitations** | |
| Reaching any directions (including overhead) | Never with the right upper extremity; limited to 25% of the workday with the left upper extremity |
| Handling (gross manipulation) | Never with the right hand; limited to 25% of the workday with the left hand |
| Fingering (fine manipulation) | Never with the right hand; limited to 25% of the workday with the left hand |
| **Environmental Limitations** | |
| Extreme Cold | Avoid |
| Extreme Heat | Avoid |
| Wetness | Avoid |
| Humidity | Avoid |
| Noise | Avoid |
| Fumes, odors, dusts, gases, poor ventilations, etc. | Avoid |

(EX. 12F.) Dr. Gursahani further opined the claimant requires the ability to shift position at will; must walk for 10 minutes at a time every 30 minutes; needs to elevate his legs to 45 degrees for half of the workday; requires a cane or other hand-held assistive devices for standing and ambulating; would be off task 25% of the day or more; is incapable of even "low stress" work; would miss more than 4 days a month due to his impairments; and would require multiple unscheduled breaks throughout the day, each lasting 20 to 30 minutes. (See id.) Dr. Gursahani's February 2021 opinion is substantially similar to his earlier opinion; however, he now opines the claimant can sit for up to 2 hours at a time, needs to walk for 5 to 15 minutes every 90 minutes, and requires unscheduled breaks of 5 to 15 minutes every 30 to 90 minutes. (See Ex. 14F.) Although Dr. Gursahani supports his opinions with brief discussion of his treatment of the claimant since November 2019, Dr. Gursahani's opinions are not consistent with the longitudinal record. As discussed above, exam findings regularly document lingering weakness of the right upper and lower extremities. (See, e.g., Ex. 1F/2-3, 5-6, Ex. 2F/9, 12, 36, 57, Ex. 4F, Ex. 8F/3, 12, Ex. 17F/10, 12.) Exam findings also reflect the claimant is

> able to ambulate without an assistive device, albeit with a slow and cautious gait. (See, e.g., Ex. 1F/2-3, 5-6, Ex. 2F/9, 12, 36, 57, Ex. 4F, Ex. 8F/3, 12, Ex. 17F/10, 12.) Exam findings do not support the degree of limitation reflected in Dr. Gurashani's opinions. There is no indication in the record the claimant should elevate his legs for any period during the day, let alone 50% of the working day. (See, e.g., Ex. 4F/4-5, 5F/24-26, 77-78. Ex. 14F/6, Ex. 10F/17-19, 30-32, Ex. 22F/2, Ex. 27F/.4) For the foregoing reasons, Dr. Gurashani's opinions are not persuasive.
>
> Dr. Gursahani also submitted opinions addressing the claimant's mental limitations. (See Ex. 13F, Ex. 15F.) In December 2019, Dr. Gursahani opined that the claimant's had "Category III" to "Category IV" deficits in each of the mental functioning areas domains of understanding and memory, sustained concentration and memory, social interaction, and adaption. (See Ex. 13F.) In his February 2021 opinion, Dr. Gursahani opines that the claimant has Category IV limitations in each of the four areas of mental functioning. (See Ex. 15F.) Dr. Gursahani defines Category III and Category IV deficits as those that would preclude performance for 10% and 15%, respectively, of an 8-hour workday. (See id., Ex. 13F.) He further opines the claimant would miss five days or more each month due to his impairments. (See Ex. 13F, Ex. 15F.) Again, although Dr. Gursahani supports his opinions with brief discussion of his treatment of the claimant since November 2019, his opinions are inconsistent with the longitudinal record. As discussed above, mental status exam findings frequently document that the claimant presented to examiners appropriately dressed and groomed, with fair eye contact, a cooperative demeanor, and the ability to communicate effectively. Additionally, examiners frequently report the claimant presented as alert, aware, oriented, without confusion, with grossly intact memory, and an adequate fund of knowledge. (See, e.g., Ex. 1F/2-3, 5-6, Ex. 2F/9, 12, 36, 57, Ex. 4F, Ex. 8F/3, 7, 12, 17, Ex. 17F/10, 12.) For the foregoing reasons, Dr. Gursahani's opinions are not persuasive.

(A.R. 25-26).

The ALJ provided legally sufficient reasons to discount Dr. Gursahani's opinions regarding Plaintiff's cognitive limitations. Plaintiff generally challenges the ALJ's assessment of Dr. Gursahani's opinion on the ground that the records cited by the ALJ do not address Plaintiff's memory or ability to concentrate.[2] However, the ALJ's decision cites to progress notes from Plaintiff's September 2018 visit to a neurology clinic where neurologist, Jose-Rafael Zuzuarregui, M.D., noted that Plaintiff was "awake and alert, oriented to person/place/time, able to convey

---

[2] Plaintiff also argues that the ALJ failed to discuss the discharge notes from Plaintiff's post-stroke rehabilitation providers, which indicated remaining deficits in concentration and memory, when evaluating the opinions of Dr. Gursahani and Dr. Benck. (*See* ECF No. 14, p. 14 (citing A.R. 416)). However, the ALJ did, in fact, reference Plaintiff's discharge notes from speech therapy (*see* A.R. 21 (citing A.R. 416 [July 2018 speech therapy discharge notes])).

history." (A.R. 26 (citing to A.R. 380)). The decision also cites to examination findings from Plaintiff's August 2018 hospital stay following a seizure that state Plaintiff was "alert, conversant, answering appropriately, not in apparent distress" and noted Plaintiff's neurological abilities as "[a]lert, oriented x 3, right upper extremity= right lower extremity= 4/5. Left upper extremity= left lower extremity= 5/5." (A.R. 26 (citing to A.R. 37)). Other examination findings cited by the ALJ also discuss Plaintiff's memory and do not otherwise indicate an inability to concentrate. (A.R. 26 (citing to A.R. 1228 [November 2018 neurological findings: "No confusion was observed. No delirium was noted. No disorientation to person. No disorientation to time. Remote memory was not impaired. Recent memory was not impaired. An adequate fund of knowledge was demonstrated."]; A.R. 1233 [same in July 2018]; A.R. 1239 [same in May 2018])).

Plaintiff also argues the ALJ should have given more weight to Dr. Gursahani's opinion that Plaintiff be totally limited in the use of his right upper extremity for reaching, handling, and fingering. The Court finds that the ALJ provided legally sufficient reasons to partially discount Dr. Gursahani's opinion regarding Plaintiff's physical limitations. For example, the ALJ found that a total limitation in use was not consistent with the record, which generally "document[ed] lingering weakness of the right upper and lower extremities." (A.R. 26 (citing A.R. 377 [October 2018 emergency room records noting Plaintiff's "weakness of right hand" but "normal sensory, motor, normal speech" neurological findings]; A.R. 380 [September 2018 neurology clinic visit physical examination records noting Plaintiff's right upper extremity demonstrated "5/5/ deltoid, biceps, 4+/5 triceps"]; AR 1200 [June 2019 consultative exam neurological findings that Plaintiff has "decreased sensation on right upper and lower extremity. Muscle strength 4/5 of right upper and lower extremity."])). Moreover, the ALJ noted that Dr. Gursahani's opinion of Plaintiff's physical limitations, which were provided in checklist form, were not supported by examination findings. (A.R. 26). The Ninth Circuit has concluded that an ALJ may discount such unsupported opinions. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 n.3 (9th Cir. 2004) (finding that a checklist report was brief, conclusionary and did not provide support for limitations assessed in the absence of objective medical evidence in the physician's treatment notes).

Accordingly, the ALJ provided legally sufficient reasons when evaluating the opinion of

Dr. Gursahani.

### 4. Dr. Benck

Plaintiff also argues the ALJ's decision to discount the opinion of Marilyn Benck, M.D., was not supported by substantial evidence.

The ALJ discussed the medical opinion provided by Dr. Benck, finding as follows:

> The opinion of Marilyn Benck, M.D., is not persuasive. Dr. Benck writes the claimant is unable to follow simple instructions because he is easily confused and has memory deficits. (See Ex. 10F/3.) Although Dr. Benck supports her findings with discussion of her treatment and examination of the claimant, her opinion is not consistent with the longitudinal record. As discussed above, the claimant frequently presented to examiners as alert, aware, oriented, without confusion, and without significant and consistent memory deficits. (See, e.g., Ex. 1F/2-3, 5-6, Ex. 2F/9, 12, 36, 57, Ex. 4F, Ex. 8F/3, 7, 12, 17, Ex. 17F/10, 12.) For the foregoing reasons, Dr. Benck's opinion is not persuasive.

(A.R. 24).

The ALJ provided legally sufficient reasons to discount Dr. Benck's opinion regarding Plaintiff's cognitive limitations—opining that Plaintiff is unable to follow simple instructions because he is easily confused and has memory deficits. Although the ALJ found Dr. Benck's opinion to be supported by Dr. Benck's own discussion of her treatment of Plaintiff, the ALJ cited to multiple examination and treatment notes from the record that generally contradicted Dr. Benck's opinion that Plaintiff suffered from severe cognitive deficits, including treatment notes drafted by NP Berube under the supervision of Dr. Benck, which noted that Plaintiff appeared to be "alert and oriented to time, place, and person." (A.R. 24 (citing to A.R. 366-7 [December 2018 visit]; A.R. 363-4 [February 2019 visit])).

Plaintiff also argues that the ALJ erred by failing to discuss Dr. Benck's assessment of Plaintiff's physical limitations. According to Plaintiff, the ALJ did not provide any reason for "apparently reject[ing] the opinion of Dr. Benck that Plaintiff had severe right-hand weakness and loss of sensation." (ECF No. 14, p. 15 (citing A.R. 1284)).  Dr. Benck filled out a general medical evaluation form in June 2019, assessing Plaintiff's musculoskeletal system as follows: "12. Please provide range of motion (ROM) and describe affected joint(s) and/or spine: Right sided weakness. Severe (R) hand weakness." (A.R. 1283- 1284). Dr. Benck also noted that Plaintiff experiences decreased sensory functioning on his right side. (A.R. 1284). The Court agrees with

the Commissioner that Dr. Benck's evaluation is not an opinion within the meaning of the regulations, *see* 20 C.F.R. § 404.1527(a)(1). Although Dr. Benck assessed Plaintiff's right-hand weakness as "severe," Dr. Benck's evaluation does not present any statements "that reflect judgments about. . .what [Plaintiff] can still do despite impairment(s), and [Plaintiff's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1) (definition of medical opinion for claims filed on or after March 27, 2017). Additionally, Dr. Benck's assessment of Plaintiff's right-side sensory functioning is unqualified. Thus, the ALJ was not required to evaluate the persuasiveness of Dr. Benck's assessment that Plaintiff experiences severe right-hand weakness and loss of sensation. Moreover, the Court notes that the ALJ's RFC assessment accounts for Plaintiff's right-hand impairment. (A.R. 28) ("The undersigned find the longitudinal record, which reflects the claimant's difficulty writing with his right hand, further supports limiting the claimant to frequently handle, finger, and reach with the right upper extremity, which is reflected in the findings of the consultant at the Reconsideration level.").

Accordingly, the ALJ provided legally sufficient reasons when evaluating the opinion of Dr. Benck.

**B.     RFC**

Plaintiff also argues that the ALJ's RFC assessment regarding Plaintiff's physical impairments is unsupported by substantial evidence. According to Plaintiff, the ALJ impermissibly relied on her own interpretation of the medical evidence instead of reconciling the opinions of Dr. Benck and Dr. Gurshani, which the ALJ found to be not persuasive, with the opinion of Dr. Sachdeva, which the ALJ found to be "generally but not fully persuasive." (*See* ECF No. 14, p. 15).

The Court finds that the ALJ's RFC finding was supported by substantial evidence. "Residual functional capacity is an administrative finding reserved to the Commissioner." *Lynch Guzman v. Astrue*, 365 Fed.Appx. 869, 870 (9th Cir. 2010) (citing 20 C.F.R. § 404.1527(e)(2)). The ALJ's RFC determination should be affirmed "if the ALJ applied the proper legal standard and his decision is supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).

As discussed above, the ALJ did not err in the analysis of medical opinions by Dr. Gursahani and Dr. Benck. Moreover, it is evident from the ALJ's decision that the ALJ relied on state agency consultants and the medical record as a whole in formulating the RFC. (A.R. 20-28). Notably, although the ALJ did not find that Plaintiff was precluded from the use of his upper right extremity, the ALJ's RFC limited Plaintiff to "frequently handle, finger, and reach with the upper right extremity." (A.R. 28). While Plaintiff points to a different interpretation of the record, this, as most, present another "rational interpretation" of the record, which means that "it is the ALJ's conclusion that must be upheld." *Burch*, 400 F.3d at 679.

In light of the explanation of her reasoning on a legal finding reserved to the Commissioner, the Court does not find legal error or a lack of substantial evidence supporting the ALJ's RFC conclusion.

**C.     Subjective Symptom Testimony**

Plaintiff's brief also argues that the ALJ improperly discounted Plaintiff's own testimony regarding his mental and physical limitations. (*See* ECF No. 14, p. 11, 15).

The ALJ discussed Plaintiff's testimony as follows:
> The claimant alleges disability due to the effects of a stroke and pain in his neck, back, upper extremities, right hand, buttocks, lower extremities, right knee, ulcers, seizures, high blood pressures, high cholesterol, depression, fatigue, chronic kidney disease, and speech difficulties. (See Ex. 5E, Ex. 21E.) He indicates that his doctors told him that he needs to remain in a wheelchair at all times. (See Ex. 16E.) He alleges that he is unable to perform activities of daily living independently, including dressing, bathing, preparing meals, performing household chores, shopping in stores, or driving a car. (See Ex. 8E, Hr'g Test.; see also Ex. 7E.) He alleges his symptoms affect his ability to lift, squat, bend, stand, reach, walk, sit, kneel, talk, hear, climb stairs, see, recall, complete tasks, concentrate, understand, follow instructions, use his hands, and get along with others. (See Ex. 8E, Hr'g Test.; see also Ex. 7E.) He testified that he needs the help of others to remember to take his medication, to attend doctor appointments, to bathe, prepare meals, perform housework, and shop for groceries. (Hr'g Test.) In sum, his allegations reflect an individual dependent on others in nearly every facet of life.

(A.R. 20).

As to a plaintiff's subjective complaints, the Ninth Circuit has concluded as follows:
> Once the claimant produces medical evidence of an underlying impairment, the Commissioner may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc); *see also Cotton v.*

*Bowen,* 799 F.2d 1403, 1407 (9th Cir. 1986) ("it is improper as a matter of law to discredit excess pain testimony solely on the ground that it is not fully corroborated by objective medical findings"). Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be "clear and convincing." *Swenson v. Sullivan,* 876 F.2d 683, 687 (9th Cir. 1989). General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.

*Lester v. Chater,* 81 F.3d 821, 834 (9th Cir. 1995), *as amended* (Apr. 9, 1996). Additionally, an ALJ's reasoning as to subjective testimony "must be supported by substantial evidence in the record as a whole." *Johnson v. Shalala*, 60 F.3d 1428, 1433 (9th Cir. 1995).

As an initial matter, the ALJ concluded that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (A.R. 20). Accordingly, because there is no affirmative evidence showing that Plaintiff was malingering, the Court looks to the ALJ's decision for clear and convincing reasons, supported by substantial evidence, for not giving full weight to Plaintiff's symptom testimony.

After extensively reviewing Plaintiff's medical history, the ALJ discussed Plaintiff's subjective complaints as follows:

> More recent exam notes that the claimant continues to experience right-sided weakness, but that his strength also continues to improve. In November 2019, he was observed using an assistive device to ambulate, but December 2019 physical exam findings make no reference to an assistive ambulatory device. (See Ex. 17F/12, 14.) Treatment notes from February 2020 and April 2020 also do not reference the use of an assistive device. (See Ex. 17F/10, Ex. 18F/8.) Recent physical and mental status exam findings document that claimant presented as alert, aware, and oriented, and without mental deficits of note. (See Ex. 17F/4, 10, 12, 14, Ex. 18F/8) Treatment notes from February 2021 document that the claimant presented as well groomed, appropriately dressed, speaking in complete sentences, and demonstrated fair eye contact, albeit with an unspecified degree of decreased psychomotor activity. (See Ex. 17F/4.) In addition, the record indicates that the claimant's seizures are well controlled on anti-seizure medication; he reports experiencing an occasional seizure corresponding with a missed dose of anti-seizure medication. (See id., Ex. 17F/10.)
>
> The claimant's activities of daily living are inconsistent with the allegations concerning the intensity, persistence and limiting effects of the claimant's symptoms. The claimant alleges that he is unable to perform many normal activities of daily living without assistance, such as dressing, bathing, preparing meals, or performing light household chores. (See Ex. 8E, Ex. 7F, Hr'g Test.; see also Ex. 7E.) The evidentiary record does not support this degree of limitation. Treatment notes from June 2018 reflect that while he had difficulty holding things

> in his right hand, he could shower, shave, and dress himself. (See Ex. 2F/57.) In October 2019, he told Dr. Swanson he could independently complete activities of daily living. (See Ex. 11F/2.) He also told Dr. Swanson that he has a license to drive a car and does drive. (See id.) The claimant reports continuing memory deficits, but treatment notes from his treating providers also reflect unimpaired recent and remote memory. (See, e.g., Ex. 8F/6-7, 12.) Treatment notes also reflect he regularly presented to examiners as alert, aware, oriented, and able to communicate effectively. (See, e.g., Ex. 1F/2-3, 5-6, Ex. 2F/9, 12, 36, 57, Ex. 4F, Ex. 8F/3, 12, Ex. 17F/10, 12.) There is no indication of inappropriate behavior or inability to respond appropriately to changes in his environment. (See, e.g., Ex. 1F/2-3, 5-6, Ex. 2F/9, 12, 36, 57, Ex. 4F, Ex. 8F/3, 12, Ex. 17F/10, 12.) The physical and mental capabilities requisite to performing many of the tasks described above—while not conclusive of the ability to maintain fulltime employment— are similar to those necessary for obtaining and maintaining employment. As such, these activities belie the claimant's allegations and instead support the conclusions reached herein.
>
> The objective findings in the evidentiary record, including the diagnostic, physical, and mental status exam diagnostic and physical exam findings discussed above, generally reflect a lack of significant and consistent deficits in any area. Likewise, the claimant's activities of daily living are indicative of an individual whose day-to-day functional abilities remain generally intact. For these reasons, the undersigned finds the record does not support restrictions greater than those reflected in the assigned residual function capacity.

(A.R. 23-24).

Upon consideration, the Court concludes that the ALJ provided "findings sufficiently specific to permit the [C]ourt to conclude that the ALJ did not arbitrarily discredit [Plaintiff's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002). The Court notes that Plaintiff does not address any of the reasons cited by the ALJ for discounting Plaintiff's subjective symptom testimony. The Court finds no legal error in the ALJ's conclusion that the objective record was inconsistent with Plaintiff's testimony regarding the limitations that resulted from Plaintiff's stroke. *See Carmickle*, 533 F.3d at 1161 ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective symptom testimony.") (citing *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995)).

Accordingly, the Court concludes that the ALJ provided clear and convincing reasons, supported by substantial evidence, for not giving full weight to Plaintiff's subjective complaints.

\\\

\\\

**II.     CONCLUSION AND ORDER**

Based on the above reasons, the decision of the Commissioner of Social Security is AFFIRMED. And the Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

Dated:   **June 15, 2023**                               /s/ *Erin P. Grosjean*
                                                                   UNITED STATES MAGISTRATE JUDGE